# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

## Bid Protest

| | |
|---|---|
| HENSEL PHELPS CONSTRUCTION CO.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | Case No. _____<br><br>Judge _____ |

## BID PROTEST COMPLAINT

Plaintiff, Hensel Phelps Construction Co. ("HPCC"), through its undersigned counsel, files this Complaint against Defendant, the United States of America, acting by and through the National Aeronautics and Space Administration ("NASA"). In support of this action, HPCC states and alleges as follows:

### I. NATURE OF THE ACTION

1. In 2022, President Joseph Biden issued Executive Order ("EO") 14063 Use of Project Labor Agreements For Federal Construction Projects. The Executive Order required the use of project labor agreements ("PLAs") on all federal construction contracts in excess of $35 million.

2. Beginning in January 2024, the Federal Acquisition Regulation ("FAR") Subpart 22.5 Use of Project Labor Agreements for Federal Construction Projects implemented the requirements of EO 14063.

3. The required use of PLAs on all construction contracts over $35 million has effectively set aside every large federal construction contract for contractors that sign a PLA with

a labor union. Any otherwise qualified contractor that does not enter into a PLA is excluded from the competition without any statutory authorization.

4. What amounts to an unauthorized socioeconomic set-aside violates the full and open competition requirements of the Competition in Contracting Act, 41 U.S.C. §§ 3301 *et seq.*, ("CICA") and the FAR.

5. According to NASA, on March 17, 2025, NASA issued "a blanket PLA waiver." Ex. 5 at 2-3 (RFI Q&A 7).

6. When NASA issued Request for Qualifications No. 80MSFC25R0015 ("RFQ") on May 7, 2025, which is protested in this action, NASA did not include a requirement that offerors enter into a PLA.

7. On May 23, 2025, according to NASA's response to RFI Question 7, NASA rescinded its blanket PLA waiver. Ex. 5 at 2-3 (RFI Q&A 7).

8. On June 26, 2025, NASA issued Amendment 5 to the RFQ, including Attachment 9, Ex. 6, which stated: "Project Labor Agreements (PLAs) are required for the Marshall Exploration Facility Project in accordance with FAR Subpart 22.5 (*Use of Project Labor Agreements for Federal Construction Projects*) and FAR 36.104(c) (*Policy*), as mandated by the Office of Management and Budget (OMB) Memorandum M-24-06, Executive Order (E.O.) 14063: *Use of Project Labor Agreements for Federal Construction Projects*, and OMB Memorandum M-25-29: *Amendments to OMB Memorandum M-24-06*."

9. The PLA requirement in the RFQ is a prerequisite intended to restrict competition by excluding potential offerors that do not enter into PLA agreements.

10. NASA does not have any project-specific basis for requiring the execution and submission of a PLA. The PLA requirement here is applied to an entire class of potential offerors

without consideration for NASA's specific needs or the basis for implementing the restrictive criterion.

11.     HPCC protests the use of the PLA requirement as an illegal restriction on full and open competition. NASA's use of the PLA requirement is arbitrary, capricious, and an abuse of discretion.

## II.  JURISDICTION, STANDING, AND VENUE

12.     HPCC delivered the pre-filing notice required by RCFC App. C, § II on July 8, 2025.

13.     Because HPCC challenges the terms of the RFQ before the July 9, 2025, 4:00pm Eastern time (3:00pm Central time), deadline for Phase I submissions set forth in Amendment 5 to the RFQ, this Court has jurisdiction over this pre-award bid protest pursuant to the Tucker Act, 28 U.S.C. §1491(b).

14.     HPCC has standing to protest terms of the RFQ. HPCC is a prospective offeror in response to the RFQ. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ But for the PLA requirement HPCC would be eligible to submit a proposal in response to this RFQ.

15.     Venue is proper in this Court under the Tucker Act, 28 U.S.C. § 1491.

## III. THE PARTIES

16.     Plaintiff HPCC is a company with its headquarters in Greeley, Colorado that performs construction for the government and in the private sector.

17. Defendant is the United States of America, acting by and through NASA, which is an executive agency and department within the federal government.

## IV. FACTUAL BACKGROUND

A. **Statutory and Regulatory Background of the Project Labor Agreement Requirement**

18. On February 4, 2022, President Biden issued Executive Order 14063 Use of Project Labor Agreements For Federal Construction Projects. EO 14063 required the use of PLAs on federal construction contracts in excess of $35 million, and directed the FAR Council to propose regulations to implement the requirements.

19. On December 22, 2024, the FAR Council published a final rule implementing EO 14063. FAR Subpart 22.5 Use of Project Labor Agreements for Federal Construction Projects imposes the requirement to use PLAs on construction contracts in excess of $35 million as described in EO 14063. The final rule also created FAR 52.222-33 Notice of Requirement for Project Labor Agreement (JAN 2024) and FAR 52.222-34 Project Labor Agreement (JAN 2024).

20. FAR Subpart 22.5 - Use of Project Labor Agreements for Federal Construction Projects sets out the implementation of the PLA requirement resulting from EO 14063.

21. The Competition in Contracting Act, 41 U.S.C. §§ 3301 *et seq.*, ("CICA") requires federal agencies to "obtain full and open competition through the use of competitive procedures" to procure goods and services. 41 U.S.C. § 3301(a). That requirement is reflected in FAR 6.101(b), which states, "Contracting officers shall provide for full and open competition through use of the competitive procedure(s) contained in this subpart that are best suited to the circumstances of the contract action and consistent with the need to fulfill the Government's requirements efficiently."

22. Under FAR 2.101 "[f]ull and open competition … means that all responsible sources are permitted to compete."

23. CICA provides for certain limited exceptions to the requirement for full and open competition. The statutory exceptions include instances when:

  a) only one responsible source exists;

  b) the requirement is so urgent and compelling that the government would be seriously injured without the ability to restrict competition;

  c) the agency head determines restricted competition is necessary to establish, maintain, or protect certain narrowly-defined sources;

  d) the terms of an international agreement or treaty requires less than full and open competition;

  e) a statute expressly authorizes the use of a specified sourced or that the procurement be conducted through another executive agency; or

  f) the agency head determines that restricted competition is in the public interest and notifies congress of the determination.

41 U.S.C. § 3304(a); *see also* §§ 3303, 3305.

24. Absent these specific exceptions, CICA makes clear that "except in the case of procurement procedures otherwise expressly authorized by statute, an executive agency in conducting a procurement for property or services shall obtain full and open competition through the use of competitive procedures in accordance with the requirements of this division and the Federal Acquisition Regulation … ." 41 U.S.C. § 3301(a).

25. An agency may exclude a specific source from a procurement as described in ¶ 23 upon the issuance of a justification and approval ("J&A," called a determination and finding or "D&F" in the FAR), but the exclusion "may not be made for a class of purchases or contracts." 41 U.S.C. § 3303(a). FAR 6.202(b)(1) also states, "This D&F shall not be made on a class basis."

26. FAR Subpart 6.2 Full and Open Competition After Exclusion of Sources identifies six instances when sources may be excluded on a class basis and for which no D&F is required:

FAR 6.203 Set-asides for small business concerns;

FAR 6.204 Section 8(a) competition;

FAR 6.205 Set-asides for HUBZone small business concerns;

FAR 6.206 Set-asides for service-disabled veteran-owned small business (SDVOSB) concerns eligible under the SDVOSB Program;

FAR 6.207 Set-asides for economically disadvantaged women-owned small business (EDWOSB) concerns or women-owned small business (WOSB) concerns eligible under the WOSB Program; and

FAR 6.208 Set-asides for local firms during a major disaster or emergency.

27. FAR 15.304 requires that "[t]he award decision is based on evaluation factors and significant subfactors that are tailored to the acquisition."

28. On January, 19, 2025, in the consolidated case of *MVL USA, Inc. v. United States*, 24-01057, this Court held that "the PLA mandates have no substantive performance relation to the substance of the solicitations at issue and violate CICA's requirement that procuring agencies 'obtain full and open competition through the use of competitive procures'" and that such violation of full and open competition was not expressly authorized by statute.

**B.   The Procurement and the RFQ**

29. On or about February 4, 2025, NASA issued a request for information, Ex. 3, seeking feedback on the feasibility of an upcoming RFQ. One of the questions presented to potential offerors concerned the inclusion of a PLA requirement in the procurement:

> 5. A project labor agreement (PLA) may be required consistent with Federal Acquisition Regulation (FAR) 52.222-34. Is your company willing to comply with the PLA requirement? Your candid feedback regarding PLA's, specifically in the Huntsville, AL geographical region is encouraged.

30. HPCC replied to such question, stating: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 7 at 10 (▮▮▮▮ Declaration).

31. On or about February 12, 2025, NASA published Questions and Responses to its February RFI. Ex. 4. One question posed related to PLAs, and NASA responded, "Currently, NASA plans to adhere to the FAR requirements for Project Labor Agreements. Additional information will be provided through the upcoming solicitation."

32. However, according to NASA, on March 17, 2025, NASA issued "a blanket PLA waiver." Ex. 5 at 2-3 (RFI Q&A 7). This was rescinded on May 23, 2025. *Id.*

33. NASA issued the RFQ No. 80MSFC25R0015 on May 7, 2025. Ex. 1. The RFQ invited offerors to submit technical proposals for the construction of a new federal NASA facility at the Marshall Exploration Facility, located on Redstone Arsenal in Huntsville, AL. Ex. 1 at 1. The new facility will be approximately 67,000 gross square feet and be a "gateway and gathering space for the MSFC campus with a large open event space, training spaces, meeting spaces, amenities, and office and support spaces that will be flexible and adaptable to future program and technology changes." Ex. 1 at 3. The RFQ anticipates award of a firm-fixed-price design-build contract, to be conducted as a two-phase design-build procurement pursuant to FAR Subpart 36.3 and FAR Part 15. Ex. 1 at 1.

34. Phase I of this procurement requires submission of the Technical Proposal in response to the RFQ, originally by June 18, 2025, at 4:00pm Eastern time, Ex. 1 at 2, later extended by several amendments, as set forth below, Ex. 2 (SAM.gov):

    a. Amendment 2 on June 3, 2025, extended the Phase I submission date to June 26, 2025;

    b. Amendment 3 on June 12, 2025, extended the Phase I submission date to July 2, 2025;

c. Amendment 4 on June 18, 2025, extended the Phase I submission date to July 9, 2025.

35. NASA will then evaluate the RFQ submissions and select no more than three offerors to advance to Phase II. Ex. 1 at 1. Offerors who do not submit Phase I qualification proposals will not be considered for Phase II or award. Ex. 1 at 2.

36. In Phase II, NASA will issue a draft Request for Proposal ("RFP") to those selected offerors from Phase I, requesting detailed proposals that address their Technical Approach, Corporate Experience, Safety & Quality Control Program/Plan, and Price. Ex. 1 at 1-2. NASA will evaluate Phase II submissions in accordance with the criteria to be outlined in Section M of the yet-undrafted RFP. *Id.* at 2. NASA will select the proposal that represents the best overall value, and the unsuccessful offerors in Phase II who provide a qualifying responsive proposal will be paid a stipend of up to $175,000 to offset the costs associated with the preparation of required conceptual designs as part of Phase II. *Id.*

37. The Phase I evaluation factors are: Factor 1 (Past Performance on Relevant Projects), Factor 2 (Prior Experience on Relevant Projects), and Factor 3 (Technical Approach). Ex. 1 at 11. Past Performance is more important that Prior Experience which is more important than Technical Approach. Ex. 1 at 24.

38. Factor 2 contains three subfactors, which are to be numerically weighted and scored as follows:

| Factor 2 Prior Experience Subfactors | Points |
|---|---|
| P1 – Offeror Projects | 225 |
| P2 – Design Team Projects | 225 |
| P3 – General Contractor Projects | 150 |
| Total | 600 |

Ex. 1 at 26.

39. Factor 3 contains three subfactors, which are to be numerically weighted and scored as follows:

| Factor 3 Technical Approach Subfactors | Points |
|---|---|
| T1 - Lead Designer | 200 |
| T2 - Experience of Key Personnel | 150 |
| T3 - Team Leadership Qualifications | 50 |
| Total | 400 |

Ex. 1 at 26.

40. NASA will assign adjectival ratings and numerical scores for each subfactor using the adjectival ratings, definitions, and percentile ranges set forth at NFS 1815.305(a)(3)(A). Ex. 1 at 26.

41. Under Section F of the RFQ, "Other Information to Submit with Proposal," NASA requested a description of the offeror's teaming agreements, including the constructor, lead architectural/engineering firm, key trade partners, and other subcontractors or trade subcontractors. Ex. 1 at 22.

42. The RFQ also requires offerors to provide information as part of Phase I specifically addressing each element under FAR 9.104-1 to demonstrate responsibility. Ex. 1 at 10.

43. Based on the submitted proposals, NASA will select no more than three (3) of the most highly qualified offerors to respond to the RFP, to be issued for Phase II. Ex. 1 at 28.

44. The preliminary Phase II Evaluation Criteria includes four (4) factors: (1) Technical Approach; (2) Corporate Experience; (3) Safety & Quality Control Program/Plan; and (4) Price. Ex. 1 at 32-34.

45. Factor 1, Technical Approach, contains three (3) subfactors: (1) Design Concepts; (2) Risk Mitigation; and (3) Design and Construction Schedule. Ex. 1 at 32-33.

46. Factor 2, Corporate Experience, also contains three (3) subfactors: (1) Organization of Project; (2) Staffing Approach; and (3) Key Personnel. Ex. 1 at 34.

47. Overall, the original RFQ, prior to Amendment 5, did not require offerors to list any partner labor organizations or otherwise reference project labor agreements. *See generally* Ex. 1. The RFQ's FAR Provisions and Clauses, incorporated by reference, did not include the FAR provisions implementing PLAs. *See* Ex. 1 at 28-29.

C. **Addition of the PLA Requirement in Amendment 5**

48. On June 26, 2025, NASA issued Amendment 5 which published the Questions and Answers from the Phase I RFQ, and incorporated "Attachment 9 Project Labor Agreement" into the RFQ. Ex. 6. This Amendment did not alter the July 9, 2025, Phase I submission deadline. Ex. 2.

49. In the June 26, 2025, Questions and Answers, multiple questions were aimed at the RFQ's Project Labor Agreement requirements. For example, Question 11 of the published RFI Questions and Responses stated, "We are pulling together our response to the RFQ and have a question on whether a [PLA] will be required for this project. This requirement will greatly impact our decision to provide a Phase 1 RFQ response" Ex. 5 at 4. NASA directed the offeror to its response to Question 7, which stated, "[on] March 17, 2025, NASA instituted a blanket [PLA] waiver for the Agency. May 23, 2025 the Agency PLA waiver was rescinded. [On] June 12, 2025, [OMB Memorandum M-25-29] was issued which further defines and restricts when a PLA exception can be granted. Project Labor Agreements will be required for this project." Ex. 5 at 2-3.

50. Despite the vague response in the Q&As, Attachment 9, included as part of Amendment 5 on June 26, 2025, clearly states that PLAs would be required for the Project. Ex. 6.

51. Additionally, Attachment 9 states, "If you anticipate any impacts resulting from these PLA requirements, you may voluntarily submit relevant information with your RFQ response in accordance with the guidance provided in OMB M-24-06 and M-25-29. This information will not be evaluated as part of the RFQ submission, will not count toward the page limit, and may be used for future market research purposes." Ex. 6.

52. While NASA states that the PLA feedback "will not be evaluated as part of the RFQ submission" and will instead "be used for future market research purposes", Ex. 6, because a PLA is required on the Project, offerors who are unable to satisfy this requirement would not be eligible for award and therefore not eligible to be considered in the competitive range for Phase II.

53. Beyond the single question asked in the February 2025 RFI, Ex. 3 at 3, there is no indication that any market research has been conducted regarding the need for a PLA on the Project or the impact such requirement would have on the Project. In fact, Attachment 9 implies that no market research has been conducted, as it states that information voluntarily provided by potential offerors regarding impacts resulting from PLA requirements may be used for future market research purposes. Ex. 6.

54. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████ While HPCC intends to timely submit a response to Phase I, and would further submit a proposal in response to Phase II if selected, the PLA requirement incorporated into this RFQ as described in Attachment 9 would disqualify HPCC from being selected, regardless of how HPCC is evaluated under the stated Factors and Subfactors. *See* Ex. 7, at 4.

55. NASA's use of the PLA requirement in the RFQ seriously harms HPCC's competitive advantage by excluding HPCC from the competition ████████████████ ███████████.

## V. CLAIMS FOR RELIEF

### COUNT ONE
### (Undue Restriction on Competition – The PLA Requirement Lacks Statutory Authorization)

56. HPCC realleges and incorporates by reference Paragraphs 1 through 55 as if fully set forth herein.

57. The RFQ's PLA requirement is not tailored to NASA's needs for this procurement.

58. The PLA requirement is not a permissible evaluation factor.

59. The PLA requirement is a non-evaluation prerequisite to receiving an award that operates as a class-based exclusion of otherwise qualified offerors.

60. Because the PLA requirement is not a valid evaluation factor, it is an exclusionary factor that restricts full and open competition. As such, it must be expressly authorized by statute.

61. Executive Order 14036 is not a statute.

62. FAR Subpart 22.5 is not a statute.

63. The PLA requirement in the Solicitation is not authorized by statute.

64. Because it lacks statutory authorization, the PLA requirement in the Solicitation is an impermissible restriction on full and open competition.

65. But for the use of a PLA requirement in the Solicitation, HPCC would be eligible for award.

66. NASA's use of a PLA requirement is arbitrary, capricious, an abuse of discretion, and unlawful.

## COUNT TWO
### (Undue Restriction on Competition – The PLA Requirement Is Unlawful Without a Justification and Authorization)

67. HPCC realleges and incorporates by reference Paragraphs 1 through 55 as if fully set forth herein.

68. CICA only allows a procuring agency to exclude specific sources from a procurement in a limited set of circumstances. 41 U.S.C. § 3303(a)(1). The RFQ's PLA requirement does not fall under any of the exceptions identified in 41 U.S.C. §§ 3303-3305.

69. Any restriction on full and open competition not based on defined set-aside categories is permissible only upon the issuance of a J&A. 41 U.S.C. § 3304(e). The exclusion may not apply to an entire class of offerors. 41 U.S.C. § 3303(a); FAR 6.202(b)(1).

70. NASA has not published the requisite justification and authorization or determination and finding required by CICA and the FAR to permit a restriction on full and open competition for this procurement.

71. FAR 22.504(d) states that the government may grant an exception to the PLA requirement where "[m]arket research indicates that requiring a project labor agreement on the project would substantially reduce the number of potential offerors to such a degree that adequate competition at a fair and reasonable price could not be achieved." Although NASA's

market research, if any, has not yet been made available, Attachment 9 states that voluntary responses by offerors to the RFQ concerning the PLA requirement may be used as market research, indicating that prior market research may not have been conducted. *See* Ex. 6.

72. The PLA requirement constitutes an illegal restriction on full and open competition.

73. But for the use of a PLA requirement in the Solicitation, HPCC would be eligible for award.

74. NASA's use of a PLA requirement is arbitrary, capricious, and an abuse of discretion.

## COUNT THREE
**(Undue Restriction on Competition – The PLA Requirement Constitutes an Unauthorized Socioeconomic Set-Aside)**

75. HPCC realleges and incorporates by reference Paragraphs 1 through 55 as if fully set forth herein.

76. FAR Subpart 6.2 identifies six instances when sources may be excluded on the basis of socioeconomic status without written justification. The RFQ's PLA requirement does not fall under any of those six socioeconomic programs.

77. The PLA requirement constitutes an illegal restriction on full and open competition.

78. But for the use of a PLA requirement in the RFQ, HPCC would be eligible for award.

79. NASA's use of a PLA requirement is arbitrary, capricious, an abuse of discretion, and unlawful.

## PRAYER FOR RELIEF

WHEREFORE, HPCC respectfully requests the Court to enter judgment in its favor and against Defendant and to:

a. Declare that NASA's requirement that all offerors and the eventual awardee under this RFQ enter into a PLA is an illegal restriction on full and open competition and is arbitrary, capricious, and an abuse of discretion;

b. Permanently enjoin NASA from implementing, incorporating, or enforcing any requirement that an offeror or awardee enter into a PLA under Executive Order 14063 or FAR Subpart 22.5;

c. Direct NASA to reissue the RFQ in accordance with law and NASA's actual requirements;

d. Award HPCC its proposal preparation costs as well as its attorneys' fees and costs in pursuing this action; and

e. Grant such other relief as the Court deems appropriate.

Dated: July 9, 2025.

Respectfully submitted,

**SMITH CURRIE OLES LLP**

*/s/ Jacob W. Scott*

Jacob W. Scott
Allison G. Geewax
Mark Emilio S. Abrajano
1921 Gallows Road, Suite 850
Tysons, VA 22182
Telephone: (703) 506-1990
Facsimile: (703) 506-1140
Email: jwscott@smithcurrie.com
Email: aggeewax@smithcurrie.com
Email: msabrajano@smithcurrie.com
*Counsel for Hensel Phelps Construction Co.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 9, 2025, a copy of the foregoing Bid Protest Complaint was served upon all parties via the Court's electronic case filing system.

_/s/ Jacob W. Scott_
Jacob W. Scott